UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ABIGAIL HERNANDEZ ARELLANO,

                                    Petitioner,

        -vs-

JEFFERSON B. SESSIONS, III, Attorney
General of the United States;[1]
KIRSTJEN NIELSEN, Secretary of the
Department of Homeland Security;
THOMAS E. FEELEY, Field Office
Director, Buffalo Field Office
Enforcement and Removal Operations,
U.S. Immigration and Customs
Enforcement; and JEFFREY J. SEARLS,
Facility Director, Buffalo Federal
Detention Facility,

                                    Respondents.

**No. 6:18-cv-06625-MAT**
**DECISION AND ORDER**

## I.    **Introduction**

        Represented by counsel, Abigail Hernandez Arellano ("Hernandez
Arellano" or "Petitioner") commenced this habeas proceeding
pursuant to 28 U.S.C. § 2241 ("§ 2241") against the named
Respondents (hereinafter, "the Government") challenging her
continued detention in the custody of the United States Department
of Homeland Security ("DHS"), Immigration and Customs Enforcement
("ICE"). For the reasons discussed below, the request for a writ of

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), William P. Barr,
Attorney General of the United States, is automatically substituted for defendant
Jefferson B. Sessions, III; and Kevin K. McAleenan, Acting Secretary of the
Department of Homeland Security, is automatically substituted for defendant
Kirstjen Nielsen).

habeas corpus is granted.

## II.  Factual Background

The following factual summary is drawn from the Declaration of Deportation Officer Robert Morris ("Morris Decl.") (Docket No. 4-1) and attached Exhibits (Docket Nos. 4-2 & 4-3).

Hernandez Arellano, a native and citizen of Mexico, arrived in the United States at an unknown place, on an unknown date, without being admitted or paroled after inspection by an Immigration Officer. On November 15, 2016, United States Citizenship and Immigration Services ("USCIS") approved Hernandez Arellano's Application for Employment Authorization (Form I-765) and application for Consideration of Deferred Action for Childhood Arrivals ("DACA"). Her DACA status was due to expire on November 14, 2018.

On February 15, 2018, the Rochester City School District ("City School District") reported to the Rochester Police Department ("RPD") that someone had made a social media post threatening a mass shooting at East High School ("East High"). A Facebook user allegedly named "Martin Doll" posted on East High's Facebook page the following statements: "I'm coming tomorrow morning," and "I'm going to shoot all of ya bitches." After further investigation, the RPD traced the user account to Hernandez Arellano, a former East Hight student who was then studying at a different City School District school. Upon questioning by the RPD

on February 16, 2018, Hernandez Arellano admitted creating the Facebook user account and making the post. She explained that she did not get along with many students at East High because they were mean to her.

On February 20, 2018, the RPD arrested Hernandez Arellano at her parents' home. A Monroe County grand jury returned an indictment charging her with two counts of Making a Terroristic Threat, in violation of N.Y. Penal Law § 490.20(1).

On February 21, 2018, DHS officers encountered Hernandez Arellano at the Monroe County Jail ("MCJ") where she was being held. After confirming her immigration status, DHS identified her as an alien subject to removal from the United States, and an immigration detainer was lodged against her at the MCJ.

After posting bond in connection with her State court criminal proceeding on February 21, 2018, Hernandez Arellano was taken into DHS custody. That same date, she was served with a Notice to Appear ("NTA"), charging her with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") § 272(a)(6)(A)(1), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.[2]

---

[2] According to Hernandez Arellano's statements to DHS officials, she arrived in New York City in 2003, traveling with her grandmother from Mexico. A DHS records check revealed that her father, Eufracio Flores, is a citizen and national of the Dominican Republic and has Lawful Permanent Resident ("LPR") status. Her mother, Laura Arellano-Mora is a citizen and national of Mexico; no information could be found on her immigration status at the time of her daughter's arrest.

On February 27, 2018, DHS reviewed Hernandez Arellano's custody status and determined that she would remain in DHS custody pending a final determination of her immigration case. Hernandez Arellano requested review of DHS's custody decision by an immigration judge ("IJ").

On February 23, 2018, USCIS notified Arellano that her DACA status and employment authorization terminated automatically on the date the NTA was issued, February 21, 2018.

On March 19, 2018, Petitioner and her immigration attorney appeared for a master calendar hearing and a bond hearing before an IJ. The IJ denied her request for a change in custody status on the basis that she failed to prove she did not pose a danger to the community. Hernandez Arellano waived her right to appeal the bond decision.

On March 22, 2018, Petitioner's custody was transferred from DHS to the custody of the Monroe County Sheriff's Department ("MCSD"), and she was remanded to the MCJ in connection with her criminal proceedings in Monroe County Court, New York State.

On April 9, 2018, the IJ administratively closed Hernandez Arellano's immigration removal proceedings since she was no longer in DHS custody due to her pending State court criminal proceeding.

On June 27, 2018, Hernandez Arellano appeared with her defense attorney and pleaded guilty in Monroe County Court (DiNolfo, J.) to one count of Falsely Reporting an Incident under N.Y. Penal Law §

240.05(1), a Class A misdemeanor. She was sentenced to a term of three years' probation. That same day, Hernandez Arellano's custody was transferred to DHS, and her immigration case was returned to the Immigration Court's active docket.

On June 28, 2018, Hernandez Arellano's immigration attorney filed a written request for bond redetermination pursuant to 8 C.F.R. § 1236.1(d). On July 13, 2018, the IJ denied the request for bond because he "continue[d] to consider [Hernandez Arellano] a danger to the community due to her February 2018 social media postings in which she threatened to shoot students at a school." IJ's Order dated 07/13/2018 (Docket No. 4-2, pp. 18-19 of 60) at 1-2. On August 22, 2018, Hernandez Arellano filed another bond determination request. On October 11, 2018, the IJ again denied bond for the same reasons. IJ's Order dated 10/11/2018 (Docket No. 4-2, pp. 14-15 of 60) at 1-2.

On August 27, 2018, Hernandez Arellano appealed the IJ's first bond decision to the Board of Immigration Appeals ("BIA").

On November 2, 2018, Hernandez Arellano appeared with her immigration attorney before the IJ for a merits hearing on her applications for relief from removal (i.e., asylum pursuant to INA § 208(a), 8 U.S.C. § 101(a)(42), based on membership in a social group comprised of "Mexican individuals with intellectual disabilities who lack adequate family protection"; withholding of removal pursuant to INA § 241(b)(3); and protection under Article

-5-

III of the Convention Against Torture ("CAT") and 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1), 1208.18(a)(7)).

In a decision and order dated November 2, 2018 ("IJ's Removal Order") (Docket No. 4-3, pp. 23-47 of 48), the IJ noted that Hernandez Arellano had entered a pleading to the NTA admitting to all relevant factual allegations. IJ's Removal Order at 2. Accordingly, based on her admissions, the IJ found that removability had been established by clear and convincing evidence. *Id.*

The IJ then analyzed Hernandez Arellano's applications for relief, beginning with her request for asylum. While recognizing that she was a "young person who has been found to suffer from intellectual disabilities," IJ's Removal Order at 7, the IJ determined that she gave "lucid testimony" and responded appropriately to questions posed by her attorney, DHS counsel, and the IJ. The IJ noted that Hernandez Arellano's attorney did not argue that her client could not meaningfully participate or assist in the preparation of her applications. Further, although Hernandez Arellano received individualized education program in school to assist with her broad-based cognitive and adaptive delays,[3] there

---

[3]

The most recent round of cognitive testing, administered when Hernandez Arellano was twenty years-old, yielded a full scale IQ score of 57. City School District psychologist Dr. Joyce Horstman, who conducted and analyzed the test results, concluded that Hernandez Arellano's scores "place [her] potential well below the average range and correlate to her previous cognitive measures." Docket No. 1-2, p. 114 of 134. Dr. Horstman also observed that Hernandez Arellano's adaptive behavior scale scores indicate that her communication and daily living skills are in the "low average range, while her socialization skills are "well

was no evidence that she suffered from a mental illness or had received any professional psychiatric care for any mental disability. *Id.* at 7-9. Though her case was "extremely sympathetic," *id.* at 9, the IJ found Hernandez Arellano had not established entitlement to asylum. First, the IJ determined that Hernandez Arellano had not adduced clear and convincing evidence that she applied for asylum within one year after her arrival in the United States, and therefore her application was untimely under INA § 208(a)(2)(B). Second, although the one-year deadline would not attach to Hernandez Arellano during her years of minority, the IJ noted that she reached age 18 in December of 2014. *See* IJ's Removal Order at 9-10.

The IJ further found that even assuming that the asylum application had been timely filed, Hernandez Arellano was statutorily ineligible due to her criminal conviction. While recognizing that Hernandez Arellano ultimately pleaded guilty to a minor level offense under New York State law, the IJ found that the circumstances underpinning the conviction comprised a "particularly serious crime" and, as such, rendered her statutorily ineligible for asylum under INA § 208, withholding of removal under INA § 241(b)(3), or withholding of removal under CAT. *See* IJ's Removal Order at 11-14.

---

below the average range." *Id.*, p. 117 of 134. Dr. Horstman concluded that Hernandez Arellano "will continue to need support from outside agencies when she leaves school." *Id.*

Even if Hernandez Arellano were statutorily eligible to advance her asylum application, the IJ determined she nevertheless failed to carry her burden of proving she had a well-founded fear of future persecution on account of membership in a protected group. The IJ found that the delineation of the alleged social group—"Mexican individuals with intellectual disabilities who lack adequate family protection"—was not established for several reasons. While Hernandez Arellano did have intellectual disabilities, the IJ found she did not "lack adequate family protection" since the hearing testimony reflected a "willingness and a unity of this family group, including [her] stepfather to potentially return to Mexico with [her]." Also, Hernandez Arellano's grandmother recently visited the United States and, after, assessing that Hernandez Arellano had "made positive strides in her development," had returned to, and still was residing in, Mexico. Thus, the IJ determined, the record showed Hernandez Arellano had family support already existing in Mexico and also persons in the United States who testified that they would potentially relocate with her should she be removed. *See* IJ's Removal Order at 14-20.

Finally, the IJ denied her asylum application as a matter of discretion, noting he was "left with a strong sense of unpredictability," *id.* at 20, about Hernandez Arellano's future. Because the IJ found her to be "someone of an unpredictable

personality," he "would err on the side of caution and deny . . . [her] asylum application as an exercise of . . . discretion" even if it had been timely filed. *Id.* at 21.

In light of his finding that Hernandez Arellano had failed to meet the lower burden required of asylum applicants, the IJ accordingly denied her application for withholding of removal under INA § 241(b)(3), which sets a more stringent standard. With regard to the CAT application, the IJ found that, on the present record, Hernandez Arellano did not demonstrate that it is more likely than not the Mexican government would act with intentionality to detain, harm or torture her on account of her intellectual disabilities. *See* IJ's Removal Order at 22-26. Since Hernandez Arellano had not established any basis for relief from or withholding of removal, the IJ ordered her removed from the United States to Mexico. *Id.* at 26-27. Hernandez Arellano appealed the IJ's decision to the BIA.

By an Order dated February 22, 2019, the BIA dismissed the appeal of the IJ's July 13, 2018 order denying Hernandez Arellano's June 28, 2018 motion for a custody redetermination hearing. The BIA noted that in support of the appeal, Hernandez Arellano submitted new evidence; the BIA therefore construed the application, in the alternative, as a motion to remand. With regard to the appeal, the BIA found "no dispute" that Hernandez Arellano continued to be detained pursuant to the February 21, 2018 Form I-286, which had already been reviewed by the IJ, and the "regulations do not

provide for a second, initial custody redetermination." BIA Order
Denying Bond Appeal (Docket No. 4-2, pp. 6-7 of 60) at 1 (citation
omitted). Rather, the IJ "properly determined [that] . . . the
procedure and requirements for subsequent bond redeterminations
under 8 C.F.R. § 1003.19(e) are applicable to [her] request." *Id.*
at 2 (citing 8 C.F.R. § 1003.19(e) (setting forth the requirements
for requesting a bond "[a]fter an initial bond redetermination" has
been made)).

The BIA agreed with the IJ's conclusion that Hernandez
Arellano had not demonstrated that her circumstances had
"materially changed" as contemplated by 8 C.F.R. § 1003.19(e). BIA
Order Denying Bond Appeal at 2 (citations omitted). The "changed
circumstance" cited by Hernandez Arellano was a new development in
her criminal case—namely, that she pleaded guilty to a lesser
offense than that with which she was charged. However, the BIA
found, this change in circumstances was not "material" because the
IJ "previously found [her] to be a danger to the community based on
the same facts and circumstances that underlie her guilty plea."
Furthermore, the BIA found, Hernandez Arellano "did not present, in
conjunction with her June 28, 2018, motion, any additional evidence
in support of her contention that circumstances have materially
changed[.]" *Id.* (citing *Matter of Ramirez-Sanchez*, 17 I. & N. Dec.
503, 506 (BIA 1980) (arguments of counsel in a brief or motion are
not evidence)). Finally, the BIA held  that "[a] number of the

documents are dated prior to, and relate to facts and events preceding" the June 2018 bond motion, and Hernandez Arellano had "not demonstrated that this evidence was unavailable and could not have been discovered or presented previously." *Id.* (citation omitted). In any event, the BIA concluded, Hernandez Arellano did demonstrate "that the result in her case would likely be different if a remand were granted for consideration of the previously unavailable evidence." *Id.* (citation omitted).

By an Order dated April 30, 2019, the BIA dismissed Hernandez Arellano's appeal of the IJ's order of removal. *See* BIA Order Affirming Removal (Docket No. 4-2, pp. 2-5 of 60). While the BIA agreed that the IJ's consideration of Hernandez Arellano's "mental competency was inadequate," "[t]here is no requirement that a mentally incompetent respondent herself have the ability to meaningfully participate in removal proceedings in order for them to move forward when sufficient safeguards can be imposed to render the proceedings fundamentally fair." *Id.* at 1-2 (citing *Matter of M-J-K*, 26 I. & N. Dec. 773, 776 (BIA 2016)). The BIA concluded that the IJ's consideration of the three relevant issues in Hernandez Arellano's case (i.e., alienage, removability, and applications for relief from removal) was fundamentally fair because she was represented by counsel and did not dispute her alienage or removability. With respect to her applications for relief removal, the BIA noted that with the assistance of counsel, Hernandez

Arellano was able to submit substantial documentary evidence and call witnesses in support of her arguments. In addition, the BIA concluded, the facts supporting her assertion that she will be mistreated in Mexico due to her intellectual disabilities "can be developed without the need for [her] testimony based on country conditions evidence and the available records regarding her cognitive disability. . . ." *Id.* at 2. Therefore, "based on the particular circumstances presented here, [Hernandez Arellano] was afforded a fundamentally fair opportunity to pursue her application for relief." *Id.*

The BIA assumed *arguendo* that Hernandez Arellano was statuorily eligible for asylum and therefore declined to reach the issue of whether her application was untimely and whether her conviction was for a "particularly serious crime." *Id.* n. 1. Instead, the BIA agreed that Hernandez Arellano had not established a nexus between the harm she fears and a protected ground. *Id.* at 2-3. The BIA found no clear error of fact or law in the IJ's determination that even if Hernandez Arellano's asserted particular social group is valid, she did not show her membership in that group. *Id.* at 3. The BIA affirmed the IJ's finding that Hernandez Arellano was not entitled to withholding of removal under the INA and deemed her CAT claim waived due to counsel's failure to argue it on appeal. *Id.* at 3. Finally, the BIA rejected her claims that the IJ was biased and denied her a full and fair hearing in

violation of her due process rights. *Id.* at 4.

DHS records show that on May 7, 2019, ICB Air Operations was notified to schedule Hernandez Arellano's removal from the United States to Mexico. On May 13, 2019, Hernandez Arellano was transferred from the Buffalo Federal Detention Facility ("BFDF") to the LaSalle ICE Processing Center in Jena, Louisiana for a removal flight to Mexico.

On May 13, 2019, Hernandez Arellano filed a Petition for Review ("PFR") in the United States Court of Appeals for the Second Circuit, along with a motion for an emergency stay of removal. *See Hernandez Arellano v. Barr*, No. 19-1395 (2d Cir.). Due to its forbearance agreement[4] with the Second Circuit, DHS suspended its efforts to execute the removal order against her. Hernandez Arellano was pulled from the removal flight and returned to the BFDF.

By an Order dated May 13, 2019, the Second Circuit granted Hernandez Arellano's stay of removal and ordered DHS to halt removal proceedings. Hernandez Arellano is currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, pending completion of her PFR proceedings in the Second Circuit.

Through the same attorney who represented her in immigration

---

[4]

"The forbearance policy represents an informal agreement between DHS and the Second Circuit pursuant to which DHS will refrain from executing a removal order until after the alien's motion for stay is dismissed or otherwise determined by the Second Circuit." *Andreenko v. Holder*, No. 6:11-CV-6610 MAT, 2012 WL 4210286, at *2 n.1 (W.D.N.Y. Sept. 18, 2012).

court, Hernandez Arellano filed the instant Petition (Docket No. 1) on August 30, 2018. The Government filed an Answer and Return (Docket No. 3) attaching an Exhibit (Docket No. 3-1) and the Declaration of Daniel Moar, Esq. (Docket No. 3-2); a Response (Docket No. 4) attaching the Morris Decl. (Docket No. 4-1), Exhibits (Docket Nos. 4-2 & 4-3), and the Declaration of Kyle Hobart (Docket No. 4-4); and a Memorandum of Law (Docket No. 5). Hernandez Arellano filed a Reply (Docket No. 6). The Petition is now fully submitted and ready for decision.

## III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland*

*Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007).

District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

## IV.  Merits of the Petition

### A.  Statutory and Regulatory Framework Applicable to Bond Determinations

The Government has detained Hernandez Arellano pursuant to 8 U.S.C. § 1226(a), which authorizes her detention until judicial review of her applications for asylum and withholding of removal are complete. *See Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016) ("8 U.S.C. § 1226(a) authorizes the detention of an alien 'pending a decision on whether the alien is to be removed from the United States'; under this section, ICE may detain an alien or release him subject to parole or a bond. If ICE elects to detain the alien, the alien may request a bond hearing before an IJ. 8 C.F.R. § 1236.1(d)(1). 8 U.S.C. § 1231(a), by contrast, governs

detention of aliens who are subject to a final order of removal. . . .”). According to BIA precedent, in an initial bond determination under § 1226(a), the alien “must establish to the satisfaction of the [IJ] and the [BIA] that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.” *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (citing *In Re Adeniji*, 22 I. & N. Dec. 1102, 1112 (BIA 1999)); *see also* 8 C.F.R. § 236.1(c)(8) (permitting DHS to release an alien detained under 8 U.S.C. § 1226(a) if the alien “demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding”).

The BIA is the only forum from which an alien may seek reconsideration of the substance of an IJ’s discretionary bond determination. *See* 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3); *see also Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (noting that 8 U.S.C. § 1226(e) bars federal court review of a “discretionary judgment” or a “decision” of the Attorney General) (citing 8 U.S.C. § 1226(e) (stating that “[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole”)). “What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system.” *Pensamiento v. McDonald*, 315 F. Supp.3d 684, 688–89 (D. Mass. 2018)

(citing *Jennings v. Rodriguez*, ___ U.S. ____, 138 S. Ct. 830, 841, 200 L.Ed.2d 122 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); *Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail [under § 1226(c)]. . . ."); other citations omitted), *appeal withdrawn sub nom. Pensamiento v. Moniz*, 18-1691 (1st Cir. Dec. 26, 2018).

**B.   Overview of Petitioner's Claims**

Hernandez Arellano's first claim (Petition ("Pet.") (Docket No. 1) at 13, § 1, ¶¶ 52-57) asserts violations of her procedural due process rights under the Fifth Amendment's Due Process Clause. Specifically, Hernandez Arellano alleges that "numerous procedural violations occurred" in connection with her requests for bond. First, she alleges that the IJ and the Government erroneously interpreted 8 U.S.C. § 1226(a) and failed to identify her period of detention as a new period of detention; instead, they relied on the "changed circumstances" standard set forth in 8 C.F.R. § 1003.19(e) for securing a bond redetermination. *Id.* ¶ 52; *see also* Reply at 2. Second, Hernandez Arellano argues that the IJ and the BIA erred in finding that "a change in [her] . . . criminal matter was not a valid change in circumstances[.]" Reply (Docket No. 6) at 3.

While the second claim in the Petition is denominated as a

substantive due process violation, her allegations sound in procedural due process. *See* Pet. ¶¶ 58-60. She asserts that her continued detention violates her due process rights because the Government failed to present evidence that she is a danger to the community and therefore not entitled to release on bond.

In summary, the Court interprets Hernandez Arellano's Petition and Reply as alleging three claims: (1) the BIA erred as a matter of law in its interpretation of 8 U.S.C. § 1226(a); (2) the IJ and BIA erred as a matter of law in concluding that she had not demonstrated "changed circumstances" so as to warrant a bond redetermination hearing under 8 C.F.R. § 1003.19; and (3) the IJ violated her procedural due process rights at the initial bond hearing because the IJ *improperly placed upon her* the burden to prove that she is not a danger to the community.

## C.    Analysis

### 1.    First Claim: Erroneous Interpretation of 8 U.S.C. § 1226(a)

Hernandez Arellano asserts that 8 U.S.C. § 1226(a) "mean[s] that a bond hearing is warranted whenever an alien is detained under the statute. Since [she] was released from DHS custody and then taken back into [DHS] custody months later, the law provides for a new bond hearing." Reply at 2. In rejecting this argument, the BIA held that "[t]he regulations do not provide for a second, initial custody determination." BIA Order dated February 22, 2019 at 1 (citing *Matter of Castro-Tum*, 27 I. & N. Dec. 271, 283 (A.G.

2018) for the general proposition that "[i]mmigration judges exercise only the authority provided by statute or delegated by the Attorney General")). Because, as discussed below, the Court finds that Hernandez Arellano's other two claims independently warrant habeas relief, the Court finds that it need not address the merits of this claim.

### 2. Second Claim: Erroneous Denial of Bond Redetermination Hearing

Hernandez Arellano argues that the IJ and the BIA erred as a matter of law in finding that a change in the status of her criminal matter was not a material change in circumstances because "the BIA's own standards for immigration judges to consider [in] releasing a detainee on bond specifically mention criminal records, as well as the circumstances surrounding them." Reply at 3 (citing *Matter of Guerra*, 24 I. & N. Dec. at 40). Hernandez Arellano asserts that the Government's sole basis for asserting that she poses a threat to the community depended on the facts of her initial arrest. However, in her request for a subsequent bond hearing, she presented "new evidence relating to her criminal record" which the IJ disregarded. *Id.*

The Court has jurisdiction to review the IJ's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional." *Lopez Reyes v. Bonnar*, 362 F. Supp.3d 762, 772-73 (N.D. Cal. 2019) (quoting *Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6,

2018), *appeal dismissed*, No. 19-15000, 2019 WL 1468148 (9th Cir. Feb. 14, 2019)), *appeal filed*, 19-15064 (9th Cir. Apr. 1, 2019). While a district court sitting in habeas review has jurisdiction to review due process challenges to immigration bond hearings, it has no authority to encroach upon an IJ's discretionary weighing of the evidence. *See*, *e.g.*, *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("Although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."). Courts nevertheless have distinguished between an unreviewable challenge to the IJ's discretionary weighing of regulatory factors and a permissible challenge to the "quantum of evidence supporting the IJ's conclusion." *Lopez Reyes*, 362 F. Supp.3d at 773 (quoting *Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *5 (N.D. Cal. Aug. 29, 2018) (collecting cases)). Additionally, where it appears that the IJ may have misinterpreted or failed to consider probative evidence, the Court may review such errors on habeas review. *Lopez Reyes*, 362 F. Supp.3d at 773 (collecting cases).

Here, the issue is whether the IJ and the BIA erred as a matter of law in determining that Hernandez Arellano did not show that her circumstances had materially changed. *Lopez-Reyes*, 362 F. Supp.3d at 773; *see also Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *5 (D. Minn. Nov. 15,

2018) ("[T]his Court cannot review whether the IJ was correct or reasonable in her final decision to order Jorge S. held without bond. This Court may review, though, whether the IJ applied the correct legal standards in making that decision.") (citing *Pensamiento*, 315 F. Supp.3d at 688-89), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018).

When the IJ denied Petitioner's June 28, 2018 request for bond, he asserted that

> [t]he only new information provided is that on June 27, 2018, [Hernandez Arellano] pleaded guilty to violating New York State Penal Law § 240.50(l), Falsely Reporting an Incident. Significantly, both parties waived appeal of the bond decision at the conclusion of the March 19, 2018, proceedings. Furthermore, the underlying factors that contributed to the [Immigration] Court's initial bond denial remain unchanged. The [Immigration] Court continues to consider [Hernandez Arellano] a danger to the community due to her February 2018 social media postings in which she threatened to shoot students at a school.

IJ's Order dated 07/13/2018 (Docket No. 4-2, pp. 18-19 of 60) at 1-2. First, by stating that the "only new" information was that Herndandez Arellano entered a guilty plea, the IJ mischaracterized the new developments in her criminal case. As noted above, although Hernandez Arellano originally was charged with two counts of an offense constituting a class D felony under New York Penal Law, she was permitted to enter a guilty plea to one count of an offense categorized as a class A misdemeanor. Signficantly, all interested

parties (the County Court, the probation office, the prosecutor, and defense counsel) agreed that Hernandez Arellano should not serve any time in prison for her crime; instead, she was sentenced to three years of probation. The Court does not have before it the transcripts of the State court proceeding, but Hernandez Arellano has attached to the Petition copies of news articles indicating that at the time of her guilty plea, she had received overwhelming support from the community, including support from administrators and teachers in the school district to which her regrettable social media post had been directed. Notably, the prosecutor commented, "We think this [disposition of the case] is in the interest of justice for many reasons and that goes to Abigail as a person and who she is and who she was represented to us to be based upon the letters that we reviewed from the people that knew her best." Docket No. 1-2, p. 134 of 134. It is telling that none of the entities and individuals most directly affected by Hernandez Arellano's actions on February 15, 2018, consider her to be a danger to the community. In other words, the community to which Hernandez Arellano would be released does not share the opinion of DHS.

The Court also finds it noteworthy that the IJ, when denying Hernandez Arellano's asylum application as a matter of discretion, expressed that he was "left with a strong sense of unpredictability" about Hernandez Arellano's future, noting that

there was "an absence of explanation or articulation from other persons" who have known her "as to what truly led her to this very serious conduct." IJ's Removal Order at 21. The IJ explained that he "struggled" to "find assurances in both the documentation and testimony" that Hernandez Arellano "is not someone who could potentially relapse to demonstrate the poor judgment she did in . . . sending a very serious threat to her former high school classmates." *Id.* Although these statements were made in the context of the IJ's reasoning as to why Hernandez Arellano did not merit asylum, they are relevant to the bond application and the changed circumstances analysis. After all, if Hernandez Arellano were granted asylum she would return to live in the Rochester community. This community's individual citizens and public officers appear to have provided the assurances, sought by the IJ, that Hernandez Arellano is "not someone who would potentially relapse to demonstrate the poor judgment she did in sending a very serious threat to her former high school classmates[,]" IJ's Removal Order at 21.

The BIA also erred by ignoring probative evidence submitted by Hernandez Arellano on appeal. In rejecting her changed circumstances argument, the BIA stated that "[*a*] *number of the documents* are dated prior to, and relate to facts and events preceding" the June 28, 2018 bond motion, BIA Order Denying Bond Appeal at 1 (emphasis supplied). However, not *all* of the documents

submitted by Hernandez Arellano pre-dated the motion. The BIA's order contains no discussion of those other documents. In particular, there are notes of a July 6, 2018 interview with Hernandez Arellano at the BFDF, conducted by her probation officer. *See* Proposed Evidence Prepared for Bond Hearings (Docket No. 1-2, pp. 51-65 of 134). Hernandez Arellano explained to her probation officer the background behind her decision to make the Facebook post, stating that former friends at East High had been talking behind her back and making fun of her; she declined to provide specifics to her probation officer, "but appeared hurt and embarrassed by what had been said." Hernandez Arellano said that posting the threat was "impulsive," that her 'mind told [her] not to do it[,]'" and that she had "no intention of following through on the threat she made[,]" the "severity or consequences of [which]" she "did not understand" at the time. Docket No. 1-2, p. 57 of 134. Hernandez Arellano "expressed remorse, and stated she would like to apologize to East High School for making people scared." *Id.*

Obviously, it is impossible to turn back time and undo the unfortunate decisions Hernandez Arellano made which led to her arrest. But it is plainly inaccurate to say that the underlying factors that contributed to the IJ's initial bond denial on March 19, 2018, remained unchanged as of July 13, 2018. *See Ramos v. Sessions*, 293 F. Supp.3d 1021, 1033 (N.D. Cal. 2018) (finding that

"IJ legally erred because she did not fully consider the evidence before her," including that the petitioner demonstrated significant changed circumstances such as meaningful rehabilitation as shown by letters from community members, his testimony showing dedication to sobriety, and by entering DUI therapy which differed meaningfully from previous therapy); *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (finding legal error where IJ misrepresented some of the petitioners evidence, failed to "engage with any of the details" with the petitioner's prior DUIs, and failed to address the steps the petitioner took to get effective treatment). Accordingly, the Court finds that  when all of her evidence is considered, Hernandez Arellano has demonstrated, as a matter of law, that her circumstances materially changed since her initial bond hearing. *Lopez Reyes*, 362 F. Supp.3d at 774 (citing *Kharis*, 2018 WL 5809432, at *5 (courts are not barred from concluding that the evidence before the IJ failed, as a matter of law, to prove the requisite showing); other citation omitted). Accordingly, the Court finds that Hernandez Arellano demonstrated, as a matter of law, changed circumstances and was entitled to a new bond hearing under 8 C.F.R. § 1003.19(e).

### D.    Third Claim: Erroneous Assignment of the Burden of Proof

Hernandez Arellano's third claim asserts that the Due Process Clause of the Fifth Amendment was violated because the IJ placed the burden on her to prove she is not a danger to the community or

a flight risk. "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Pensamiento*, 315 F. Supp.3d at 689 (quoting *Jennings*, 138 S. Ct. at 841).

The Due Process Clause of the Fifth Amendment forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const., amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Longstanding Supreme Court precedent has underscored the principle that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). That an individual may not be a United States citizen or may not be in this country legally does not divest them of all protections enshrined in the Due Process Clause. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The question that has continued to vex courts is the nature of the process due, because

the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (citations omitted).

In the context of a § 1226(a) custody hearing, the Ninth Circuit has held that the Constitution mandates placing the burden of proof on the Government to show ineligibility for bail by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit explained that "even where prolonged detention is permissible, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quotations omitted). Several district courts have held that *Singh*'s due process analysis survived *Jennings* since the Supreme Court expressly declined to address the constitutional question.[5] *E.g., Cortez v. Sessions,* 318 F. Supp. 3d 1134, 1146–47

---

[5] In *Jennings*, the class of habeas petitioners had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. *See Jennings*, 138 S. Ct. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Id.* The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court without reaching the merits of the constitutional arguments. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), *on remand to Rodriguez v. Robbins*, Case No. 07-cv-3239-TJH-RNB (C.D. Cal.).

(N.D. Cal. 2018) ("The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning."), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018).[6]

In *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), the Second Circuit relied on *Singh*'s constitutional avoidance analysis to hold, in the context of an criminal alien detained under § 1226(c), that due process requires a bail hearing within six months of the alien being taken into custody at which the Government must establish by clear and convincing evidence that the alien poses a risk of flight or a danger to the community. After *Lora* was decided, the Supreme Court granted *certiorari* in *Rodriguez v. Jennings*, 804 F.3d 1060 (9th Cir. 2015), and rejected the Ninth Circuit's constitutional avoidance analysis on which the Second Circuit had relied in

---

[6]

    *See also D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019) ("'[B]ecause the Jennings majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that Jennings has any bearing on the appropriate procedures consistent with due process.'") (quoting *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018)), *report and recommendation adopted as modified sub nom. Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp.3d 959 (D. Minn. 2019).

interpreting § 1226(c). Accordingly, the Supreme Court vacated *Lora* and remanded it for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830, *supra.*

On remand in *Lora*, the Second Circuit dismissed the appeal as moot because, in the interim, the petitioner had been released on bond. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018). Thus, the Second Circuit did not have occasion to revisit the constitutional question in *Lora*. Some district courts in this Circuit have held that while *Lora* is no longer precedential authority, it still carries "significant persuasive weight," *v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (citing *Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010)), on the questions of the proper burden and quantum of proof at immigration bond hearings.

A number of district courts have taken up the question left open by the Supreme Court in *Jennings*, and "there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342 F. Supp.3d 429, 434-36 (S.D.N.Y. 2018) (citing *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *32 (S.D.N.Y. Oct. 17, 2018); *Sajous*, 2018 WL 2357266, at *12; *Hernandez*, 2018 WL 3579108, at *10; *Frederic v. Edwards*, No. 18 Civ. 5540(AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento,* 315 F. Supp.3d at

692; *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), ___ F. Supp.3d
____, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v.
Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D. N.J.
July 5, 2018); *Portillo v. Hott*, 322 F. Supp.3d 698, 709 n.9 (E.D.
Va. 2018); *Cortez*, 318 F. Supp.3d at 1145-46; *see also D. v. Sec'y
of Homeland Sec.*, 2019 WL 1905848, at *6; *Diaz-Ceja v. McAleenan*,
No. 19-CV-00824-NYW, 2019 WL 2774211, at *10 (D. Colo. July 2,
2019).

In concluding that due process is violated by allocating the
burden of proof to a § 1226(a) detainee, a number of these courts
have looked for guidance to the Supreme Court's precedent on civil
commitment and detention. *E.g.*, *Darko*, 342 F. Supp.3d at 434
(citing *Addington*, 441 U.S. at 425 ("In considering what standard
should govern in a civil commitment proceeding, we must assess both
the extent of the individual's interest in not being involuntarily
confined indefinitely and the state's interest in committing the
emotionally disturbed under a particular standard of proof.
Moreover, we must be mindful that the function of legal process is
to minimize the risk of erroneous decisions."); other citations
omitted). The Government clearly has legitimate interests in both
public safety and securing a noncitizen's appearance at future
immigration proceedings. However, the Court cannot discern any
legitimate Government interest, beyond administrative convenience,
in detaining noncitizens generally while their immigration

proceedings are pending and no final removal order has been issued.
*See Addington*, 441 U.S. at 426 ("[T]he State has no interest in
confining individuals involuntarily if they are not mentally ill or
if they do not pose some danger to themselves or others. Since the
preponderance standard creates the risk of increasing the number of
individuals erroneously committed, it is at least unclear to what
extent, if any, the state's interests are furthered by using a
preponderance standard in such commitment proceedings."). The Court
agrees with the district courts which have held that allocating the
burden to a § 1226(a) detainee to prove he should be released on
bond violates due process because it asks "[t]he individual . . .
to share equally with society the risk of error when the possible
injury to the individual is significantly greater than any possible
harm to the [Government]." 441 U.S. at 427. *See Darko*, 342 F.
Supp.3d at 435 ("[G]iven the important constitutional interests at
stake, and the risk of harm in the event of error, it is
appropriate to require the government to bear the burden,
particularly in light of long-established Supreme Court precedent
affecting the deprivation of individual liberty[.]") (citing
*Linares Martinez*, 2018 WL 5023946 at *2); *Diaz-Ceja*, 2019 WL
2774211, at *10 (similar) (citing *Addington*, 441 U.S. at 427;
*Singh*, 638 F.3d at 1203; other citations omitted).   As to the
applicable burden of proof, most courts that have decided the issue
have concluded that Government must supply clear and convincing

evidence that the alien is a flight risk or danger to society. *See Darko*, 342 F. Supp.3d at 436 (stating that "the overwhelming majority of courts to have decided the issue" utilized the "clear and convincing" standard) (collecting cases); *but see Diaz-Ceja*, 2019 WL 2774211, at *11 (finding that the appropriate standards are ones that mirror the Bail Reform Act, i.e., the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence) (internal and other citations omitted). As noted above, *Singh* and *Lora* required the Government to meet its burden by clear and convincing evidence, a conclusion followed by the vast majority of the district courts—and all the district courts in this Circuit—that have decided this issue.

This Court joins with these courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a). *Darko*, 342 F. Supp.3d at 436 (citations omitted).

Having found a constitutional error, the Court next examines whether such error was prejudicial to Hernandez Arellano. *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (S.D.N.Y. Nov. 14, 2018) (citing *Singh*, 638 F.3d at 1205 (analyzing whether IJ's application of an erroneous evidentiary burden at bond hearing under § 1226(a) prejudiced alien detainee); *Garcia-Villeda v.*

*Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process.") (internal quotations omitted)); *Linares Martinez*, 2018 WL 5023946, at *5 (rejecting government's argument that alien detained under § 1226(a) was not prejudiced by any due process violation at first bond hearing; "the IJ plainly could have found that the single set of charges—now reduced to misdemeanors—was not enough to show, by clear-and-convincing evidence, that Linares's release would pose a danger").[7]

The Court begins by examining the factors which the BIA directs IJs to consider in determining whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee

---

[7] *But see Darko*, 342 F. Supp.3d at 436 (finding due process error due to IJ's imposition of burden of proof on alien detained under § 1226(a); granting habeas relief and ordering second individualized bond hearing without undertaking analysis of whether alien was prejudiced by erroneous burden of proof at first bond hearing).

prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Matter of Guerra*, 20 I & N Dec. at 40. While the IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others," *id.*, the IJ's decision nonetheless must be "reasonable." *Id.*

Here, the sole factor considered by the IJ was Hernandez Arellano's "criminal record." Although she had only one incident of criminal activity, and she pleaded guilty to a lesser charge, the IJ focused on the "seriousness of the offense." It is worth emphasizing, however, that Hernandez Arellano was granted bond in her State criminal case, and both the State court and the prosecutor believed that Hernandez Arellano's actions did not warrant incarceration.

Turning to the remaining factors, the IJ did not consider that Hernandez Arellano has a fixed address in the United States; her parents are ready to welcome her back to the family's home in Rochester. The IJ did not consider that Hernandez Arellano has resided in this country since she was five years-old; she is now twenty-one. The IJ did not consider Hernandez Arellano's strong family ties in the United States, which, ironically, he cited as a reason to find that she did not demonstrate membership in her proposed social group of "intellectual disabilities lacking adequate family support."

While Hernandez Arellano does not have an employment history to speak of, this is understandable since she was in high school at the time of her criminal offense. The Court notes that she related to her probation officer that she had "'a job in the [BFDF] washing bathrooms, washing tables, and giving out food trays[.]" Docket No. 1-2, p. 57 of 134. In addition, she has had no disciplinary infractions. *Id.*

The IJ also did not consider that Hernandez Arellano has never missed a court appearance and has never attempted to flee prosecution or otherwise escape from law enforcement or immigration authorities. While Hernandez Arellano did not enter the country legally, she was a child of tender years at the time she was brought here. She subsequently sought and obtained DACA status.

It is evident that Hernandez Arellano has numerous favorable equities, some of which the IJ recognized in other decisions he issued on her various applications. And, there is no evidence that she presents a flight risk. Given that the only factor considered by the IJ in finding Hernandez Arellano to be a danger to the community was her arrest in February 2018, the Court "cannot conclude that the clear and convincing evidence standard would not have affected the outcome of the bond hearing." *Singh*, 638 F.3d at 1205.

Habeas relief accordingly is warranted to the extent that Hernandez Arellano must be afforded a new bond hearing before an IJ

at which the Government must adduce clear and convincing evidence that she is a danger to the community (there is no suggestion in the record that Hernandez Arellano was or is a flight risk).

## V.    Conclusion

For the foregoing reasons, the Court grants habeas relief on two of Hernandez Arellano's claims: First, the Court finds that she was unlawfully denied a bond hearing under 8 C.F.R. § 1003.19(e) based on an erroneous finding she had not shown changed circumstances. Second, the Court finds that she was denied due process at her bond hearing because she was forced to bear the burden of proof. Hernandez Arellano is entitled to the same relief on both claims, namely, a new bond hearing. Regardless of how the hearing is characterized, the Government must bear the burden of proving by clear and convincing evidence that Hernandez Arellano is not entitled to bond because she is a danger to the community.

Accordingly, it is hereby ordered that, within ten days of the date of entry of this Decision and Order, the Government shall bring Hernandez Arellano before an IJ for an individualized bond hearing. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that she is a danger to the community. If the Government fails to provide Hernandez Arellano with such a bond hearing within ten days, the Government shall immediately release her. If the Government holds the required bond hearing but fails to prove, by clear and convincing evidence,

that Hernandez Arellano is a danger to the community, the Government must release her on bail with appropriate conditions. The Government is further ordered to provide a status report to this Court within five days following the completion of the bond hearing. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**s/ Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    July 26, 2019
          Rochester, New York.